**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Simmons,<br><br>              Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>              Defendant. | No. CV-09-00540-TUC-CRP<br><br>**ORDER** |

    Anthony Simmons is 53 years old. He has worked as a switchboard operator, hotel engineer, and telemarketer. He suffers, among other things, from degenerative joint and disc disease of the spine, chronic pain, and depression.

    Mr. Simmons has applied for social security benefits multiple times. His first application was denied by an administrative law judge ("ALJ"), who found that he had the residual functional capacity ("RFC") to perform sedentary work. Doc. 13, Tr. 46-55. The second application was denied on the ground that there had been no change in his condition. Tr. 153-56. Those decisions have not been appealed.

    With respect to the third application (Tr. 196-98, 724-25), Mr. Simmons claims to be disabled as of October 1, 2004 (Tr. 163). An ALJ issued an unfavorable decision on October 24, 2006. Tr. 73-79. The Appeals Council remanded the case for further consideration of Plaintiff's depression, his subjective complaints, lay witness statements, the opinion of a nurse practitioner, and vocational evidence. Tr. 81-83. A hearing before the ALJ was held on November 5, 2008. Tr. 774-815. The ALJ issued a second decision

on March 24, 2009, finding Mr. Simmons not to be disabled within the meaning of the Social Security Act. Tr. 17-30. This decision became Defendant's final decision when the Appeals Council denied review. Tr. 6-9.

Mr. Simmons then brought this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1. The issues are fully briefed. Docs. 18, 19, 20. Oral argument has not been requested. For reasons that follow, the Court will affirm Defendant's decision denying benefits.

**I.     Standard of Review.**

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The decision denying benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "This is a highly deferential standard of review: 'Substantial evidence' means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quotation marks and citation omitted).

**II.    Discussion.**

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show he has not worked since the alleged disability onset date, he has a severe impairment, and his impairment meets or equals a listed impairment or his RFC precludes him from performing past work. Where the claimant meets his burden, the Commissioner must show that the claimant is able to perform other work. 20 C.F.R. §§ 404.1520, 416.920; *see Valentine*, 574 F.3d at 689.

Plaintiff has not worked since the alleged onset date. Tr. 19, ¶ 2. He has multiple severe impairments: status post back surgery, cervical degenerative joint disease, cervical and lumbar degenerative disc disease, adhesive capsulitis of the right shoulder, status post

left meniscectomy, chronic pain syndrome, depressive disorder, and alcohol-induced amnestic disorder. Tr. 19-23, ¶ 3. Those impairments do not meet or equal a listed impairment. Tr. 23, ¶ 4. Plaintiff is not disabled, the ALJ found, because he has the RFC to perform certain sedentary work, including his past job as a telemarketer. Tr. 24-29, ¶¶ 5-6.

Plaintiff claims that the ALJ erred by adopting the opinion of examining psychologist Dr. James Armstrong as the basis for the mental RFC determination. More specifically, Plaintiff contends that the ALJ improperly rejected the opinions of nurse practitioner Valerie Kading and examining psychologist Dr. Jill Caffrey and that Dr. Armstrong's opinion is not otherwise supported by substantial evidence. Doc. 18 at 10-21. Plaintiff further contends that the ALJ erred in concluding that he can do his past work as generally performed. *Id.* at 21-22.

Defendant argues that the ALJ did not err and his decision is supported by substantial evidence. Doc. 19. The Court agrees.

**A.     Medical Opinions.**

Dr. Armstrong, a licensed psychologist, reviewed medical records and examined Plaintiff on July 16, 2008. Tr. 617. Plaintiff scored 27 out of 30 on the Folstein mental status test, a score within normal limits. Tr. 622. He was diagnosed with moderate depression, pain disorder, mild alcohol-induced amnestic disorder, and alcohol and cocaine abuse, reported to be in remission. Tr. 623.

In a medical source statement concerning the ability to do work-related activities, Dr. Armstrong opined that Plaintiff has moderate limitations in the ability to make judgments on complex decisions and understand, remember, and carry out complex instructions. Tr. 624. He further opined that Plaintiff has only mild limitations with respect to simple decisions and instructions and the ability to interact appropriately with others. Tr. 624-25.

After having considered multiple opinions concerning Plaintiff's psychological condition – three by examining psychologists, two by consulting psychiatrists, and one by

a nurse practitioner – the ALJ decided to adopt the opinion of Dr. Armstrong. Tr. 28. Plaintiff makes several arguments as to why the adoption of that opinion is erroneous. None has merit.

Plaintiff first argues that the ALJ improperly discounted the opinion of nurse practitioner Valerie Kading, who, along with other staff members, treated Plaintiff at CODAC Behavioral Health Services. Doc. 18 at 12-15. In a mental RFC assessment dated January 13, 2006, Ms. Kading noted that Plaintiff had experienced significant psychological stressors in the past year, including the death of family members, and suffers from chronic depressed mood. Tr. 594. She opined that Plaintiff is markedly limited in his ability to maintain attention and concentration, to work within a schedule and maintain regular and punctual attendance, and to complete a normal workweek and perform at a consistent pace without interruptions from psychological symptoms. Tr. 592-93.

Under the relevant regulations, nurse practitioners are listed among the examples of "other" medical sources. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Nurse practitioners, unlike licensed psychologists such as Dr. Armstrong, generally do not qualify as "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 416.913(d)(a). The distinction between "other sources" and "acceptable medical sources" is significant because only opinions from acceptable medical sources may be considered "treating source" opinions deserving of "special weight." 20 C.F.R. §§ 404.1502, 416.902; *see Register v. Astrue*, No. CV-10-2749-PHX-LOA, 2011 WL 6369766, at *9-10 (D. Ariz. Dec. 20, 2011) (distinguishing between "other sources" and those entitled to "treating-source" status); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (noting that opinions of treating physicians are entitled to "special weight").

The medical records from CODAC (Tr. 530-71, 686-708) do not show, and Plaintiff does not otherwise assert, that nurse practitioner Kading worked closely with, and under the supervision of, a licensed psychologist or physician. *See Taylor v. Comm'r of Soc. Sec. Admin*, 659 F.3d 1228, 1234 (9th Cir. 2011); *Gomez v. Chater*, 74 F.3d 967,

971 (9th Cir. 1996). Ms. Kading, therefore, is not an acceptable medical source. *See Register*, 2011 WL 6369766, at *9-11. Her opinion properly may be discounted for "germane" reasons. *Id.* at *11 (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ gave little weight to the opinion of Ms. Kading on the ground that she failed to distinguish between effects of depression and those of substance abuse and fleeting life stressors. Tr. 29. The ALJ also noted that the same month Ms. Kading found marked limitations, CODAC progress notes show that Plaintiff was "high in spirits – believ[ing] that things are finally coming together." Tr. 708. The Court agrees with Defendant (Doc. 19 at 10-11) that those are germane reasons for discounting Ms. Kading's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancy between a doctor's opinion and his clinical notes constitutes a "clear and convincing reason" for not relying on the opinion); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ properly rejected physician's opinion where it was contradicted by treatment notes); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (substantial evidence supported decision to discount doctor's opinion where it was inconsistent with medical notes); *Betts v. Astrue*, No. CV-10-02189-PHX-NVW, 2011 WL 3681561, at *5 (D. Ariz. Aug. 23, 2011) (ALJ did not err in declining to give a nurse practitioner's "other source" opinion greater weight than those of acceptable medical sources where there were inconsistencies between the nurse's RFC assessment and progress notes).

Noting that he was depressed and dysphoric in December 2006 (Tr. 562) and angry after the denial of his claim for benefits (Tr. 700, 703), Plaintiff asserts that Ms. Kading's opinion accurately reflects his mood over a long period of time. Doc. 18 at 14. But even if this were a reasonable interpretation of the medical record, the question is not whether Ms. Kading's opinion is supported by substantial evidence. Rather, the relevant question is whether the ALJ's decision to adopt the opinion of Dr. Armstrong over that of Ms. Kading is supported by substantial evidence – that is, "such relevant evidence as a

reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Valentine*, 574 F.3d at 690. The Court answers in the affirmative.

Plaintiff contends that pursuant to Social Security Ruling 96-5p, 1996 WL 374183 (July 2, 1996), the ALJ was required to recontact Ms. Kading for clarification as to whether she distinguished between effects of depression and those of substance abuse and fleeting life stressors. Doc. 18 at 13. But the duty to recontact does not apply to the "other source" opinion provided by Ms. Kading. Ruling 96-5p, by its express terms, is limited to recontacting "treating sources." SSR 96-5p, 1996 WL 374183, at *6; *see Billings v. Astrue*, No. CV 08-518-N-CWD, 2010 WL 1248258, at *6 (D. Idaho Mar. 23, 2010).

The ALJ, according to Plaintiff, violated Social Security Ruling 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Although Ruling 06-03p discusses the importance of "other source" evidence in establishing disability, nowhere does it purport to overrule the regulations' classification of nurse practitioners as "other sources." The Ruling makes clear that the distinction between "acceptable medical sources" and "other" healthcare providers is an important one given that "only 'acceptable medical sources' can give us medical opinions" and "only 'acceptable medical sources' can be considered treating sources[.]" SSR 06-03p, 2006 WL 2329939, at *2; *see Nestle v. Astrue*, No. 10-6203-JE, 2011 WL 7082542, at *13 (D. Or. Dec. 30, 2011).

Contrary to Plaintiff's assertion (Doc. 18 at 13), Ruling 06-03p does not require the ALJ to evaluate the opinion of Ms. Kading – an "other source" healthcare provider – according to the factors set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The Ruling makes clear that those factors "apply only to the evaluation of medical opinions from 'acceptable medical sources[.]'" SSR 06-03p, 2006 WL 2329939, at *4. Moreover, as explained more fully above, the ALJ provided "good reasons" for discounting Ms. Kading's opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see* Docs. 18 at 13, 20 at 3.

Plaintiff further argues that in adopting the opinion of Dr. Armstrong, the ALJ

improperly discounted the opinion of examining psychologist Dr. Jill Caffrey. Doc. 18 at 18-19. Dr. Caffrey examined Plaintiff on February 7, 2006, diagnosing him with major depressive order and rule-out cognitive disorder, not otherwise specified. Tr. 604-07. In a medical source statement concerning the ability to do work-related activities, Dr. Caffrey opined that Plaintiff has moderate limitations in the ability to understand, remember, and carry out detailed instructions, to make simple work-related decisions, to maintain attention and concentration for extended periods, to work within a schedule and maintain regular and punctual attendance, to complete a normal workweek and perform at a consistent pace without interruptions from psychological symptoms, and to respond appropriately to changes in the work setting. Tr. 598-603.

The ALJ discounted Dr. Caffrey's opinion because it is based, at least in part, on misinformation. Tr. 29. Plaintiff reported to Dr. Caffrey that he "last worked in approximately 1993 or 1994[.]" Tr. 605. Plaintiff in fact worked for another decade. Tr. 190, 782-83. He reported having last used illicit drugs in 1970 "when he was using marijuana" (Tr. 605), but tested positive for cocaine in 2005 (Tr. 548, 800). The ALJ noted, correctly, that Plaintiff's lack of candor could have affected Dr. Caffrey's evaluation of him. Tr. 29. The Court finds that the ALJ provided "specific and legitimate reasons" for discounting Dr. Caffrey's opinion, and those reasons are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 827, 830 (9th Cir. 1995); *see Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (ALJ did not err in discounting examining physician's opinion where it was based in part on the claimant's exaggerated claims).

Plaintiff contends that pursuant to 20 C.F.R. § 404.1512(e), the ALJ should have recontacted Dr. Caffrey to resolve any ambiguities in her opinion. Doc. 18 at 19. But that "regulation applies only to a 'treating' source," not examining sources such as Dr. Caffrey. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see Billings*, 2010 WL 1248258, at *6. Moreover, the duty to recontact is triggered "only when the evidence from the treating medical source is inadequate to make a determination as to the

claimant's disability." *Thomas*, 278 F.3d at 958. The ALJ found the evidence, including the opinion of Dr. Caffrey, adequate to make a determination regarding Plaintiff's disability. Tr. 17-30. He therefore had no duty to recontact Dr. Caffrey. *See Thomas*, 278 F.3d at 958; *Bayliss*, 427 F.3d at 1217; *Billings*, 2010 WL 1248258, at *6.

Plaintiff further argues that Dr. Armstrong's opinion is not supported by substantial evidence. Doc. 18 at 15-18. Citing a letter authored by Dr. Caffrey (Tr. 745-46), Plaintiff claims that Dr. Armstrong's own psychological testing undermines his opinion concerning cognitive abilities. Doc. 18 at 15-17. Referencing Dr. Armstrong's narrative report (Tr. 617-23), Dr. Caffrey speculated that the 27 out of 30 score on the Folstein mental status test "may not be correct," that Plaintiff "likely lost" between one and three points on word recall trials, and that it "may well be the case" that Plaintiff has greater limitations than those assessed by Dr. Armstrong. Tr. 745-46. Dr. Caffrey also had "concerns" about Plaintiff's well-being and decision-making abilities, noting that he had reported having homicidal and suicidal thoughts. Tr. 46; *see* Tr. 21-22, 621.

Speculation by one doctor that another doctor's opinion may be without merit does not render that opinion unsupported by substantial evidence. Dr. Armstrong's opinion concerning Plaintiff's mental RFC was based on more than the results of the Folstein test. His psychological examination encompassed many factors, including an evaluation of Plaintiff's appearance, his hearing, vision, and speech, his insight, judgment, and memory, his alertness and orientation, and his emotional state. Tr. 617-22. Dr. Armstrong further considered Plaintiff's history of mental health treatment, interpersonal relations, daily activities, and family psychological history. Tr. 619-23. Aside from the Folstein test results, Dr. Armstrong found "no significant difficulty in [Plaintiff] attending to [the] interview and tracking questions." Plaintiff "responded to questions with no significant latency." Tr. 621. The Court finds that Dr. Armstrong's opinion is supported by substantial evidence. *Cf. Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (doctor's opinion alone constituted substantial evidence where it rested on his

own independent examination of the claimant); *Cashin v. Astrue*, No. EDCV 09-161 JC, 2010 WL 749884, at *7 (C.D. Cal. Feb. 24, 2010) ("The opinions of [the two doctors] were supported by each examining psychologists' independent clinical findings, and thus constituted substantial evidence[.]").

Finally, Plaintiff argues that the ALJ erred in adopting the opinion of Dr. Armstrong because it is not supported by "other substantial evidence." Doc. 18 at 19. The relevant inquiry is not whether substantial evidence conflicts with a medical opinion, but instead whether the ALJ's decision to adopt the opinion is supported by substantial evidence – that is, evidence which is "more than a mere scintilla, but less than a preponderance." *Valentine*, 574 F.3d at 690. Dr. Armstrong's opinion is supported by more than a scintilla of evidence, including his own clinical findings.

With respect to the purported "other substantial evidence," Plaintiff claims that lay evidence does not support the opinion of Dr. Armstrong. Doc. 18 at 19-21. Plaintiff's friend, Mary Cline, completed a function report in November 2004. Tr. 276-84. Testimony from friends of the claimant constitutes competent evidence and therefore cannot be disregarded without comment. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). If the ALJ wishes to discount the testimony of lay witnesses, "'he must give reasons that are germane to each witness.'" *Id.* (citation omitted).

The ALJ has met his burden with respect to Ms. Cline. She stated that she had known Plaintiff for six years and that during that entire time "he's been disabled." Tr. 276-77. Noting, correctly, that Plaintiff had worked and earned substantial income between 2000 and 2003 (Tr. 190), the ALJ found that Ms. Cline "does not understand what is required to qualify for disability under the Social Security Act and Regulations." Tr. 26. This is a legitimate reason germane to Ms. Cline. The ALJ did not err in deciding to adopt Dr. Armstrong's medical opinion despite the testimony of Ms. Cline. This is true even if, as Plaintiff asserts (Doc. 20 at 2), Dr. Armstrong did not explicitly mention lay testimony in his report.

Ms. Cline's statement that Plaintiff had been "disabled" prior to the alleged onset

date, Plaintiff asserts, could also be taken to mean that he was having problems working. Doc. 20 at 6. "Although Plaintiff may interpret the evidence differently, it is the province of the ALJ to analyze the testimony." *Edwards v. Astrue*, No. 1:09cv1002 DLB, 2010 WL 2942081, at *12 (E.D. Cal. July 23, 2010). His interpretation of Ms. Cline's statement is reasonable and, therefore, will not be disturbed. Plaintiff asserts that the ALJ could have subpoenaed Ms. Cline (Doc. 20 at 6), but presents no legal authority or argument that the ALJ erred in failing to do so.

Plaintiff references a field office report dated July 11, 2003 (Tr. 295-97), in which social security employee Dora Walker noted that Plaintiff was uncooperative and rude. Doc. 18 at 20. To the extent the ALJ erred by not commenting on those observations, the error is harmless.

This Circuit has held that "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Even when crediting Ms. Walker's observations, the Court is confident that no reasonable ALJ could have found Plaintiff to be disabled. Ms. Walker explicitly noted "no physical or mental impairment." Tr. 297. She further observed that Plaintiff had no difficulty hearing, reading, understanding, concentrating, talking, or answering questions. Tr. 296. The fact that Plaintiff was rude and uncooperative with Ms. Walker does support a finding of disability. Nor does it undermine the clinical findings and opinion of Dr. Armstrong. *See* Doc. 20 at 2.

Plaintiff challenges the opinion of examining psychologist Dr. James Rau (Tr. 399-402), asserting that his "optimistic assessment of [Plaintiff's] mental health turned out to be false." Doc. 18 at 21. But Dr. Rau's opinion was given weight by the ALJ only "to the extent consistent with Dr. Armstrong's more specific limitations." Tr. 28. Dr. Rau's opinion in no way undermines that of Dr. Armstrong.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle*

*v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Where the evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). The Court concludes that the ALJ "acted in accordance with his responsibility to determine the credibility of medical evidence." *Thomas*, 278 F.3d at 958. His decision to adopt the opinion of Dr. Armstrong is supported by substantial evidence.

### B. Past Work.

After having considered the medical evidence and record as a whole, and having heard vocational expert testimony (Tr. 802-15), the ALJ determined that Plaintiff has the RFC to perform his past work as a telemarketer. Tr. 24-29, ¶¶ 5-6. The ALJ erred, Plaintiff contends, because he made no finding that Plaintiff can type at a competitive speed and failed to address Plaintiff's migraine headaches and poor vision. Doc. 18 at 22.

Plaintiff's alleged inability to type and headaches are based solely on his hearing testimony. Tr. 814. That testimony was found by the ALJ to be not fully credible. Tr. 24-26. Plaintiff does not challenge this finding.

Plaintiff asserts that the ALJ did not specifically address the ability to type (Doc. 20 at 8), but "in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). "The ALJ's decision reflects that he considered the record as a whole and weighed the functional assessments contained in [P]laintiff's mental health records in both assessing [his] RFC and finding that [he] could perform his past work." *Wade v. Astrue*, N. 2:10-cv-01153 KJN, 2011 WL 4500863, at *4 (E.D. Cal. Sept. 27, 2011).

Moreover, the regulations make clear that all physical and mental impairments "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908; *see Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). The alleged

inability to type and headaches – unsupported by medical evidence – do not render erroneous the ALJ's finding that Plaintiff is able to perform his past work as a telemarketer.

Medical records show reports of poor vision (Tr. 429, 545), but Plaintiff did not testify that vision problems, standing alone, would preclude him from working as a telemarketer. Instead, Plaintiff stated that "watching the screens on the computer gives [him] migraine headaches." Tr. 814. As explained above, Plaintiff has presented no medical evidence establishing migraine headaches as an impairment. Nor does he assert that his vision problems cannot be solved through use of corrective lenses.

Plaintiff bears the burden of establishing disability by showing that he is unable to perform his past work because of a physical or mental impairment. *See* 20 C.F.R. §§ 404.1520, 416.920; *Valentine*, 574 F.3d at 689. He has not met his burden. Nor has the ALJ failed to make appropriate findings to ensure that Plaintiff can do his past work as generally performed.

### III. Conclusion.

Because substantial evidence supports the ALJ's decision and the ALJ committed no legal error, the decision denying benefits must be affirmed. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court therefore need not decide whether the case should be remanded for further proceedings or an award of benefits.

**IT IS ORDERED:**

1. Defendant's decision denying benefits is affirmed.
2. The Clerk is directed enter judgment accordingly.

Dated this 9th day of February, 2012.

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE